891 A.2d 661

WAYNE WOOD, PETITIONER–RESPONDENT, v. JACKSON TOWNSHIP, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 30, 2006—Decided February 17, 2006.

Before Judges CUFF, LINTNER and GILROY.[1]

*Robert D. Budesa* argued the cause for appellant (*Berry, Sahradnik, Kotzas, Riordan & Benson,* attorneys; *Mr. Budesa,* on the brief).

---

[1] Judge Cuff did not participate in oral argument. However, with the consent of counsel she has joined in this opinion.

*R.* 2:13–2(b).

*Stephen B. Sachs* argued the cause for respondent.

The opinion of the court was delivered by

LINTNER, J.A.D.

Petitioner, Wayne Wood, suffered a compensable injury. An Order Approving Settlement was entered on June 25, 2002, awarding him 100% of total permanent disability with second injury fund participation, *N.J.S.A.* 34:15–95. At the time of his injury, Wayne's wages were $900 per week, entitling him to a compensation rate from respondent, Jackson Township, of $539 per week for 225 weeks, commencing March 19, 2002, and ending July 11, 2006. Because Wayne was receiving Social Security disability benefits, respondent was entitled to a credit, pursuant to *N.J.S.A.* 34:15–95.5, in the amount of $155.41 per week, thus reducing Wayne's award to $383.59 for the designated period. The June 2002 Order Approving Settlement reflected the Social Security Disability benefits offset.

On February 8, 2003, Wayne died from causes unrelated to his injury. He was fifty-four years of age. Because Wayne had not reached the age of sixty-two, his Social Security Disability benefits terminated as of February 1, 2003. His widow, Patricia, applied to the Division of Workers' Compensation to modify the Order Approving Settlement, seeking to delete the $115.41 per week offset, requiring respondent to pay the full compensation rate for the remainder of the designated period. Respondent opposed Patricia's application, asserting that Patricia's rights derive from *N.J.S.A.* 34:15–12e, entitling her to "the remaining payments," thereby limiting her to the amount she was getting under the June 2003 Order Approving Settlement. The compensation judge disagreed and found that, under *N.J.S.A.* 34:15–13, Patricia was entitled to the full compensation rate Wayne would have received if his Social Security Disability had been terminated. On February 1, 2005, the judge entered an order requiring respondent to pay $539 per week from the date of petitioner's death until July 11, 2006.

On appeal, respondent reprises its argument previously made before the Division. Relying upon *N.J.S.A.* 34:15-12e, specifically the use of the words "remaining payments," respondent contends that Patricia is not entitled to a modification of the award to make up for the Social Security Benefits no longer received, but is instead limited to the "remaining payments" set forth in the initial award. We disagree and hold that the Social Security Benefits offset under *N.J.S.A.* 34:15-95.5 does not continue where petitioner's dependent no longer receives those benefits because they terminated on petitioner's death. Accordingly, we affirm the order requiring respondent to pay the full compensation rate from the date of petitioner's death through the end of the designated period.

The basic principles governing appellate review of Workers' Compensation decisions are well settled. When reviewing an administrative agency's decision based upon the evidence, we are required to determine whether, as in any non-jury case, the agency's findings reasonably could have been reached on the basis of sufficient credible evidence in the record, with due regard to the agency's expertise. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). The agency's interpretation of a statute, however, although entitled to some weight, is not binding on the reviewing court. *Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor*, 125 *N.J.* 567, 587, 593 *A.*2d 1177 (1991).

The Workers' Compensation Act (the Act) is "humane social legislation designed to place the cost of a work connected injury upon the employer who may readily provide for it as an operating expense." *Tocci v. Tessler & Weiss, Inc.*, 28 *N.J.* 582, 586, 147 *A.*2d 783 (1959). "It has long been axiomatic . . . that the Act is remedial social legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." *Kahle v. Plochman, Inc.*, 85 *N.J.* 539, 547, 428 *A.*2d 913 (1981). Thus, the Act has consistently been accorded liberal construction. *Brock v. Public Serv. Elec. & Gas Co.*, 149 *N.J.* 378, 383, 693 *A.*2d 894 (1997). That being said, the preference toward

liberal construction must nevertheless "be constrained by the plain meaning of the statute and the underlying purpose of the legislature." *Ibid.*

We begin our analysis with the Social Security Act offset provision, which mandates that disability benefits for any month shall be reduced to the point where the combined Social Security and periodic Workers' Compensation benefit does not exceed eighty percent of the individual's average current earnings. 42 *U.S.C.* § 424a(2). Section 424a(d), however, provides for an exception for those states that enacted laws, on or before February 18, 1981, requiring a reduction in the amount of Workers' Compensation benefit payments by the federal disability benefits received. 42 *U.S.C.* 424a(d).[2] "The clear intent of the statute was to preserve and protect a level of income for the disabled employee while avoiding a duplication of benefits irrespective of the cause of the disability." *Krysztoforski v. Chater,* 55 *F.*3d 857, 860 (3d Cir.1995); *see Richardson v. Belcher,* 404 *U.S.* 78, 83, 92 *S.Ct.* 254, 258, 30 *L.Ed.*2d 231, 236 (1971) (purpose of federal offset provision is to reduce excessive benefit payments by "limiting total state and federal benefits to 80% of [pre-disability earnings]").

*N.J.S.A.* 34:15–95.5, effective August 21, 1980, provides in pertinent part that compensation benefits received by an employee under *N.J.S.A.* 34:15–12(b) or 34:15–95 "shall be reduced by an amount equal to the disability benefits payable under the Federal ... Disability Insurance Act." The provisions of *N.J.S.A.* 34:15–95.5 "complement[ ] the set-off provision of the Social Security Act" requiring that federal disability benefits be reduced by compensation benefits unless, under state law, compensation benefits are required to be reduced by federal disability payments. *Fiore v. Trident Constr. Co.,* 251 *N.J.Super.* 101, 103, 597 *A.*2d 85

---

[2] Alaska, Kansas, Montana, Oregon, Arkansas, Kentucky, Tennessee, New Hampshire, California, Louisiana, New Jersey, Utah, Colorado, Maine, New York, Washington, District Of Columbia, Michigan, North Dakota, Wisconsin, Florida, Minnesota, and Ohio. are the only states that have taken advantage of the exception. *Larson's Workers' Compensation Law* § 157.03D.

(App.Div.1991), *Ries v. Harry Kane Inc.*, 195 *N.J.Super.* 185, 478 *A.*2d 1195 (App.Div.1983).

*N.J.S.A.* 34:15–12(b) established the compensation rate to be paid for "disability total in character and permanent in quality...." *N.J.S.A.* 34:15–12(e) provides in relevant part that in "case of the death of the person from any cause other than the accident or occupational disease, during the period of payments for permanent injury, *the remaining payments* shall be paid to such of the deceased person's dependents as are included in the provisions of R.S. 34:15–13 ...." (emphasis added). *N.J.S.A.* 34:15–13 includes a decedent petitioner's surviving spouse as a dependent.

In *Metro Glass & Glazing Inc. v. Orona*, 868 *P.*2d 1178 (Colo. Ct.App.1994), the Colorado Court of Appeals was faced with a similar fact pattern. The decedent, who was permanently and totally disabled, was receiving Social Security disability benefits in addition to his compensation benefits. *Id.* at 1179. The Social Security benefits terminated on his death and the issue was whether the petitioner's dependent widow should be subject to the offset or receive full dependent compensation payments. The Colorado statute did not speak to what rate should be paid in terms of the existence or nonexistence of Social Security offsets. *Ibid.* Noting the principle that the "social security offset exists to avoid a duplication of benefits," the Colorado Court of Appeals concluded, "allowance of the offset would result in an absolute decrease in the amount of support received by [petitioner's] wholly dependent widow ... a result [which] would be manifestly inequitable and contrary to the beneficent purposes of the Workers' Compensation Act." *Id.* at 1180.

As in the Colorado legislation, the use of the words "remaining payments" in our statute is susceptible to more than one interpretation. Considering the intent of the offset legislation to preserve and protect a level of income while avoiding duplication and the remedial and beneficent purpose of the Act, we come to the same inescapable conclusion, as the Colorado Court of Ap-

peals. Simply stated, neither our Legislature nor Congress intended the Social Security disability benefit offset to continue after a dependent spouse is no longer receiving the very benefit that gave rise to the offset in the first place. To do so would penalize a dependent spouse unfairly, contrary to the purpose of the Act. As a dependent spouse, petitioner's widow is entitled to the full measure of compensation petitioner would have received had he not been receiving Social Security disability benefits. Accordingly, we affirm the Order of February 2, 2005, deleting the offset and requiring respondent to pay petitioner's dependent spouse the full compensation rate of $539 per week from the date of petitioner's death to the end of the designated period.

Affirmed.